UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| MATTHEW SHAW; and BROOKE SHAW,<br><br>    Plaintiffs,<br><br>v.<br><br>JULIUS MWALE; and KAILA MWALE,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' EX PARTE MOTION FOR ALTERNATIVE SERVICE (DOC. NO. 10)**<br><br>Case No. 1:24-cv-00122<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

On July 19, 2024, Plaintiffs Matthew Shaw and Brooke Shaw filed this action against Defendants Julius Mwale and Kaila Mwale,[1] bringing fraud, negligent misrepresentation, breach of contract, and unjust enrichment claims.[2] These claims arise from the Shaws' allegation that the Mwales "scammed the Shaws, misleading them to 'invest' roughly $1.7 million" in various investment projects throughout Africa, which turned out to be "nothing like what was represented."[3] The Shaws further allege the Mwales ignored their demands to return their money, and failed to comply with a loan modification agreement.[4] After several attempts to serve the Mwales proved futile,

---

[1] Because Defendants Julius Mwale and Kaila Mwale share a last name, their first names are used throughout the remainder of this order, for clarity.

[2] (Compl. ¶¶ 82–109, Doc. No. 1.)

[3] (*Id.* ¶¶ 42–66.)

[4] (*Id.* ¶¶ 67–81.)

1

the Shaws filed a motion for alternative service, seeking to serve the Mwales via mail and email.[5]  As explained below, the Shaws were reasonably diligent in their attempts at service, and their proposed methods of service are reasonably calculated to apprise the Mwales of this action.  Accordingly, the Shaws' motion is granted.

## LEGAL STANDARDS

Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that service on an individual may be completed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[6]  Because the Shaws filed this action in the District of Utah, Utah law applies.

As relevant here, the Utah Rules of Civil Procedure permit service of an individual by "delivering a copy of the summons and complaint to the individual personally, or by leaving them at the individual's dwelling house or usual place of abode with a person of suitable age and discretion who resides there."[7]  But "[i]f the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence . . . or if there is good cause to believe that the person to be served is avoiding service, the party seeking service may file a motion to allow

---

[5] (Ex Parte Mot. for Alt. Serv. ("Mot."), Doc. No. 10.)

[6] Fed. R. Civ. P. 4(e)(1).

[7] Utah R. Civ. P. 4(d)(1)(A).

2

service by some other means."[8]  The motion must include "[a]n affidavit or declaration supporting the motion [setting] forth the efforts made to identify, locate, and serve the party."[9]  The method of service must be "reasonably calculated, under all the circumstances, to apprise the named parties of the action."[10]

## ANALYSIS

As explained below, the Shaws have demonstrated diligent efforts to locate and serve the Mwales, and their proposed methods of service are reasonably calculated to apprise the Mwales of this action.

### I.     The Shaws diligently attempted to locate and serve the Mwales.

The Shaws' attempts to serve the Mwales are as follows.  On the date the Shaws filed this case (July 19, 2024), their counsel emailed the complaint to the New York-based attorney (Matthew Weiss) who represented Kaila in the negotiation of the loan agreement that is the subject of this case.[11]  In this email, the Shaws' counsel asked if Mr. Weiss would accept service on behalf of Julius or Kaila.[12]  Mr. Weiss responded

---

[8] Utah R. Civ. P. 4(d)(5)(A).

[9] *Id.*

[10] Utah R. Civ. P. 4(d)(5)(B).

[11] (Mot. 3, Doc. No. 10.)

[12] (*See* Ex. B to Mot., Email Correspondence, Doc. No. 10-2 at 2 ("Will you accept service for Kaila?  For Julius?").)

that he was "not authorized to accept service," though he would "discuss with my client and let you know if that changes."[13]

Between July 27 and August 8, 2024, a server hired by the Shaws attempted physical service five times at various days and times at an Alamo, California residence the Shaws describe as the Mwales' "primary residence."[14] The Shaws explain they visited the Mwales at this residence "on multiple occasions."[15] In his affidavit, the serve states the residence is a gated property, only reachable via an intercom system.[16] Each of the five times the server attempted service, he rang the intercom, but no one responded, and the server could not see anyone at the residence.[17]

On August 12, 2024, the Shaws' counsel had a telephone conversation with Mr. Weiss, during which Mr. Weiss "offered to make someone available to accept service of the Complaint at the Alamo residence on Friday, August 16, 2024, if the Shaws would take down their website (www.juliusmwale.com) that publicly publishes a copy of the

---

[13] (Id. ("Email and attachment received. I am not authorized to accept service. I will, however, discuss with my client and let you know if that changes.").)

[14] (Mot. 3, Doc. No. 10; see also Ex. C to Mot., Server's Aff., Doc. No. 10-3 at 2 (describing attempts to serve on a Saturday at 2:32 PM, a Monday at 7:32 PM, a Thursday at 8:37 AM, a Saturday at 11:13 AM, and a Thursday at 4:03 PM).)

[15] (Mot. 3, Doc. No. 10.)

[16] (See Ex. C to Mot., Server's Aff., Doc. No. 10-3 at 2.)

[17] (See id.) During one attempt at service, the server "waited around for several minutes to see if someone would come or go, but nobody [was] seen." (Id.)

Complaint."[18]  When the Shaws' counsel attempted to clarify whether Mr. Weiss represented both Julius and Kaila, Mr. Weiss stated he only represented Kaila, but Julius had "'given [him] authority to negotiate on his [Julius's] behalf' for purposes of offering to accept service if the Shaws took down the website."[19]  The Shaws declined the offer.[20]

The Shaws have demonstrated reasonable diligence in attempting to serve the Mwales.  On five occasions—on various times and days of the week—the server attempted to serve the Mwales at a residence where the Shaws have visited the Mwales several times.[21]  The Mwales also offered to accept service at this address (if the Shaws took their website down), which supports the Shaws' belief that this is the Mwales' primary residence.  Moreover, the Shaws' counsel attempted to serve the Mwales through Mr. Weiss, who acknowledged he represents Kaila, and stated Julius gave him authority to make an offer regarding acceptance of service.  In sum, where the

---

[18] (Mot. 4, Doc. No. 10; *see also* Ex. A to Mot., Decl. of Pls.' Counsel in Supp. of Mot. for Alt. Serv. ¶ 10 (swearing under penalty of perjury that the conversation happened as described).)

[19] (Mot. 4, Doc. No. 10 (alterations in original).)

[20] (*Id.*)

[21] *See C504750p LLC v. Baker*, 2017 UT App 36, ¶¶ 4, 12, 397 P.3d 599 (2017) (finding efforts reasonably diligent after service was attempted five times "on varying days of the week and at different times each day" at what was "believed to be [the defendant's] address" based on interactions with the defendant).

Shaws took "advantage of readily available sources of information"[22] to locate and serve the Mwales, the Shaws have shown reasonable diligence.[23]

### II. The proposed methods of service are reasonably calculated to apprise the Mwales of this action.

The Shaws propose to serve the Mwales by sending the complaint and summons via (1) first-class mail to the Mwales' Alamo residence; (2) email to Julius at his email address listed on a business card he gave Mr. Shaw; and (3) email to Mr. Weiss at the email he has used to communicate with the Shaws' counsel.[24] The Shaws contend these methods of service are reasonably calculated to apprise the Mwales of the action because (1) the Alamo residence is the Mwales' "primary residence" and the Shaws have visited them there multiple times; (2) Julius himself gave Mr. Shaw the business card; and (3) the Mwales appear to be in contact with Mr. Weiss, who stated he represents Kalia and made an offer to accept service on Julius's behalf.[25]

The Shaws' proposed methods of service are reasonably calculated, under the circumstances, to apprise the Mwales of this action. As an initial matter, the Mwales appear to be aware of this action, based on their offer to accept service if the Shaws

---

[22] *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 20, 100 P.3d 1211 ("To meet the reasonable diligence requirement, a plaintiff must take advantage of readily available sources of relevant information.").

[23] Mr. Weiss's offer to accept service on behalf of the Mwales if the Shaws take their website down also gives reason to believe the Mwales are avoiding service.

[24] (Mot. 7, Doc. No. 10; *see also* Ex. D to Mot., Julius Mwale Bus. Card, Doc. No. 10-4.)

[25] (*See* Mot. 7–8, Doc. No. 10.)

remove the complaint from their website.  Regardless, the Shaws provide factual support to show their proposed methods of service will reach the Mwales.  As explained above, the circumstances strongly suggest the Mwales reside at the address where the Shaws propose to serve by first-class mail.  The Shaws also propose to email service documents to Mr. Weiss, who confirmed he represents Kalia, and stated Julius gave him authority to negotiate service.  Finally, the Shaws propose emailing service documents to Julius at an email Julius provided to Mr. Shaw.  Under the circumstances, these proposed methods of service are reasonably calculated to apprise the Shaws of this action.

## CONCLUSION

Because the Shaws have diligently attempted to locate and serve the Mwales, and the Shaws' proposed methods of service are reasonably calculated to apprise the Mwales of this action, the Shaws' motion for alternative service[26] is granted.[27]  The court orders as follows:

---

[26] (Doc. No. 10.)

[27] The Shaws also ask the court to award them "increased costs and fees associated with Mr. Weiss's refusal to accept service and the Shaws' multiple attempts to serve Defendants." (Mot. 8–9, Doc. No. 10).  But the Shaws do not identify (and the court did not find) any case where a court awarded the costs of service under circumstances like this.  Regardless, where the Shaws do not identify what "increased costs and fees" they seek, an award of fees is improper.  *See Toni Brattin & Co. v. Mosaic Int'l, LLC*, No. 15-mc-80090, 2015 U.S. Dist. LEXIS 46756, at *11–12 (N.D. Cal. Apr. 9, 2015) (unpublished) (declining to award costs "incurred as a result of Respondents' actions in evading personal service," and noting "[e]ven if an award of costs was technically available here, the Court declines to order such an award," because the plaintiff "has not provided an itemization of the costs it seeks to have Respondents reimburse, and the Court will not blindly issue such an Order").

1. The Shaws may serve Julius Mwale and Kaila Mwale by doing each of the following:

    a. mailing a summons, the complaint, and a copy of this order to the Alamo, California address provided in the motion.[28]  If the recipient or post office provides a forwarding address, the Shaws must attempt to physically serve that address as generally required under the Utah Rules of Civil Procedure.  If physical service fails, the Shaws must mail the documents to the forwarding address.

    b. emailing the same documents to Matthew Weiss's email address listed in the motion,[29] three times per week for two consecutive weeks, not more often than once every other day (unless a reply is received accepting service on behalf of both Julius and Kaila).

    c. emailing the same documents to Julius Mwale's email address listed in the motion,[30] three times per week for two consecutive weeks, not more often than once every other day (unless a reply is received accepting service on behalf of both Julius and Kaila).

---

[28] (*See* Mot. 3, Doc. No. 10.)

[29] (*See id.* at 7.)

[30] (*See id.* at 7.)

Service shall be deemed complete upon completion of the steps set forth above. The Shaws shall file proof of compliance with this order.

DATED this 7th day of October, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge